**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**UNITED STATES OF AMERICA,**
        **Plaintiff,**

**vs.**                                              **Case No: 3:07cv50/RV/MD**

**HORACE A. GANT,**
        **Defendants.**

_____

**REPORT AND RECOMMENDATION**

        This cause is before the court upon plaintiff's motion for summary judgment filed on December 7, 2007.  (Doc. 18).  The defendant, proceeding *pro se*, responded in opposition to the motion.  (Doc. 22).  On February 1, 2008 the court entered an order informing the parties that the motion for summary judgment would be taken under advisement on February 19, 2008.  (Doc. 23).  The order also advised the parties of the importance and ramifications of Rule 56 summary judgment consideration, and directed the parties to file and serve affidavits and any other documents or materials authorized to be filed under the Federal Rules of Civil Procedure prior to the advisement date.  (*Id.*).  No additional materials have been filed by either party.

        Upon review of the submissions of the parties, it is the opinion of the undersigned that the motion for summary judgment should be granted.

**BACKGROUND AND PROCEDURAL HISTORY**

        Plaintiff United States of America, acting on behalf of the Railroad and Retirement Board ("RRB"), filed this civil action on January 29, 2007 to recover

funds wrongfully paid by the RRB to defendant Horace Gant.  (Doc. 1).[1]  Defendant filed an answer.  (Doc. 9).  Plaintiff has moved for summary judgment, submitting various Rule 56 materials and arguing that the United States is entitled to judgment against the defendant in the amount of $78,778.37.  (Docs. 18, 19).  In response, defendant has submitted an unsworn, unverified statement arguing that he believes the amount of overpayment to total approximately $68,000.00; and that he "has always been willing to repay the alleged overpayment; however, the $500.00 a month repayment schedule assessed by the Plaintiff, would cause him extreme hardship." (Doc. 22).

## DISCUSSION

### Summary Judgment Standard

A motion for summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law."  *Id.  Accord Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1441 (11th Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348,

---

[1] This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1345, which provides the district courts with original jurisdiction "of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."  *Id.*

1356, 89 L.Ed.2d 538 (1986)).  "In reviewing a motion for summary judgment, the court must view the record and all inferences therefrom in a light most favorable to the nonmoving party." *Mindis Metals, Inc. v. Transportation Ins. Co.*, 209 F.3d 1296, 1298 (11th Cir. 2000) (citing *WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir. 1988)).

Undisputed Material Facts

      The following facts are set forth in plaintiff's statement of material facts.  The statement was submitted with plaintiff's motion for summary judgment as required by Northern District of Florida Local Rule 56.1(A).[2]  These facts are deemed to be admitted because the defendant has not submitted his own statement controverting said facts.[3]

      On August 20, 1992 Horace Gant, then employed by a Railroad Industry agency covered by the Railroad Retirement Act, completed and signed an

---

[2]Local Rule 56.1(A) provides:

> Any motion for summary judgment filed pursuant to Fed.R.Civ.P. 56 . . . shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. . . .

> The statement shall reference the appropriate deposition, affidavit, interrogatory, admission, or other source of the relied upon material fact, by page, paragraph, number, or other detail sufficient to permit the court to readily locate and check the source.

> The party opposing a motion for summary judgment shall, in addition to other papers or matters permitted by the rules, file and serve a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried, in the format set forth above.

> All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be filed and served by the opposing party.

[3]To the extent defendant's response to the motion for summary judgment could be liberally construed as his statement of genuinely disputed facts, such response is still deficient in that defendant failed to provide or reference the source of his material facts.  N.D. Fla. Loc. R. 56.1(A). Even more significantly, defendant has not submitted an affidavit or equivalent evidence in opposition to plaintiff's affidavits and other summary judgment materials. Therefore, any factual assertions made in defendant's response, e.g., that defendant believes the overpayment to total approximately $68,000.00 instead of $78,778.37, cannot be considered because, notwithstanding the procedural deficiencies of the response, the factual assertions therein are neither verified nor sworn to under penalty of perjury.

Application for Employee Annuity under the Railroad Retirement Act.  (Doc. 19, Attach. A, Baer Aff. ¶ 3 and Ex. 1).[4]  On that same day, Mr. Gant completed and signed an Application for Determination of an Employee's Disability.  (Attach. A, ¶ 4 and Ex. 2).  At the time Mr. Gant signed these two documents, he received the RRB Booklet entitled Employee Disability Benefits.  (Attach. A ¶ 5 and Ex. 3).  By signing the forms identified above, Mr. Gant certified several matters, including the following:

> • that . . . if I am covered by the earnings restriction of the Railroad Retirement Act, I agree to immediately notify the RRB if I earn more than the annual earnings exempt amount.

> • Failure to report my earnings on a timely basis may result in a penalty deduction from my annuity.

> • I have received the appropriate application booklet, Employee Disability Benefits.  I also understand that I am responsible for reporting any events that would affect my annuity, as explained in that booklet.

> • to immediately notify the RRB: if I perform any work.

> • I know that I am receiving a disability annuity, failure to report work and earnings promptly may result in a penalty deduction in my annuity payments.

(Attach. A ¶ 5 and Exs. 1, 2).  Every October thereafter, the RRB sent Mr. Gant a Disability Reminder Notice clearly stating that the annuitant must report to the RRB if the annuitant performs any work and must return his annuity payment for any month during which the annuitant's earnings exceed $400 after deduction of disability related work expenses.  (Attach. A ¶ 6 and Ex. 4).

On November 3, 1995 Mr. Gant completed a second Application for Determination of an Employee's Disability in order to obtain Medicare coverage.  (Attach. A ¶ 7 and Ex. 5).  By signing the application, Mr. Gant certified the following:

---

[4]Hereafter, all reference to attachments and exhibits will be to those provided at Doc. 19.

**• I have received the appropriate application booklet, Employee Disability Benefits.   I also understand that I am responsible for reporting any events that would affect my annuity, as explained in that booklet.**

**• to immediately notify the RRB: if I perform any work.**

**• I know that I am receiving a disability annuity, failure to report work and earnings promptly may result in a penalty deduction in my annuity payments.**

(Attach. A ¶ 8 and Ex. 5).

On June 21, 1999 Mr. Gant executed a Continuing Disability Report wherein he indicated that he was employed at the Saenger Theater, Pensacola, Florida, and that his monthly rate of pay was $200.  (Attach. A ¶ 9 and Ex. 6).  On September 7, 1999, in a written letter to Mr. Gant forwarded to Mr. Gant's address of record with sufficient postage to ensure delivery, the RRB advised Mr. Gant that he had an obligation to report any increase in pay.  (Attach. A ¶ 10 and Ex. 7).

On August 13, 2003 Mr. Gant executed a second Continuing Disability Report wherein he indicated that he was employed at the Saenger Theater, Pensacola, Florida, and that his monthly rate of pay was between $400 and $1800.  While he did not disclose the length of time he had been receiving this amount of money, he stated: "I misunderstood the bills that was passed in 2001 by Congress.  I thought the cap on earning was lifted.  Started making more than $400 a month.  I am very sorry I misunderstood so I'm leaving my future in your hands although it's my fault for not getting the right information."  (Attach. A ¶ 11 and Ex.  8).

On August 20, 2003, in a response to an RRB inquiry, the Saenger Theater disclosed that Mr. Gant had exceeded his monthly and yearly limitations in 2001 and 2002, in that he had earned $12,160.11 and $14,909.39, respectively.  (Attach. A ¶ 12 and ex. 9).  On July 18, 2004, in a response to another RRB inquiry, the Saenger Theater disclosed that Mr. Gant had exceeded his monthly and yearly limitations in 2003 and 2004, in that he had earned $17,047.27 and $11,377.50, respectively. (Attach. A ¶ 13 and Ex. 10).

On August 3, 2004 Mr. Gant executed a third Continuing Disability Report, wherein he indicated that he was employed at the Saenger Theater, Pensacola, Florida, and that his monthly rate of pay exceeded $400 a month from October 2003 through June 2004.  (Attach. A ¶ 14 and Ex. 11).  On August 14, 2004 Mr. Gant forwarded a letter to the RRB, wherein he explained his need for extra money. (Attach. A ¶ 5 and Ex. 12).

On March 20, 2006 the Director of Retirement Benefits for the RRB found that, based on the information the RRB had received, Mr. Gant had been overpaid $78,778.37 due to his work and earnings during the period January 2001 through July 2004.[5]  (Attach. A ¶ 5 and Ex. 13).  By letter dated July 3, 2006, demand was made upon Mr. Gant to either repay the amount in a lump sum or by installments. (Doc. 1 ¶ 15; doc. 9 ¶ 15).  The parties have been unable to agree on an installment arrangement.

As set forth above, defendant Gant has not come forward with evidentiary material demonstrating a genuine issue of fact for trial.  He does not deny that he received the overpayments.  Nor does he genuinely dispute the amount.  He simply states that a $500.00 per month repayment schedule purportedly assessed by plaintiff would cause him extreme hardship.

Whether Plaintiff is Entitled to Judgment as a Matter of Law

The RRB is an independent agency in the executive branch of the government, which has been empowered to decide questions whether employers or employees fall within the provisions of the Railroad Retirement Act ("Act"), 45 U.S.C. §§ 231-231v.  It has all the duties and powers necessary to administer the Act, and it may require all employers and employees to furnish such information and records as are necessary for the administration of the Act.  *Id.*

---

[5]Although the total overpayment for the period was $82,807.40, it was reduced by $2,074.03 that was payable for August 2004 because defendant did not work for that month and he had not been paid for that month.  The overpayment amount was further reduced by $1,967.00 which the RRB withheld from an adjustment it processed on November 10, 2005.  (Attach. A ¶ 5 and Ex. 13).

If an individual has been paid more benefits than due under the Act, or has been paid benefits to which he or she is not entitled, the RRB is entitled to recover the erroneous payment.  45 U.S.C. § 231i(a) (2007).[6]  One remedy for such recovery is the right to require that an overpayment to an individual be immediately and fully repaid in cash by that individual.  20 C.F.R. § 255.5 (2007).  The regulations further provide that if the RRB determines that the individual is financially unable to pay the amount of the indebtedness in a lump sum, payment may be accepted in regular installments.  20 C.F.R. § 255.5.[7]

In the instant case, the facts set forth above establish that the defendant received overpayments in the amount of $78,778.37 to which he was not entitled in accordance with his contract with the RRB, and that the defendant was aware of the limitations placed on his annuity payments.  Although provisions of the Act expressly authorize the RRB to recoup overpayments administratively, the United States has elected to collect the monies wrongfully paid through an action independent of the administrative scheme, i.e., this civil action for a monetary judgment against the defendant.  By law, plaintiff has that right.  *See United States v. Wurts*, 303 U.S. 414, 415, 58 S.Ct. 637, 638, 82 L.Ed. 932 (1938) (holding that the government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid, and no statute is necessary to authorize the government to sue in such a case, since the right to sue is independent of statute).

---

[6]Although the RRB may waive recovery if it finds (1) that the beneficiary is without fault, and (2) that the recovery is either against the purpose of the Act or against equity or good conscience, 45 U.S.C. § 231i(c), neither party asserts that defendant ever sought waiver through available administrative remedies.  Even if he had, review of a final decision by the RRB concerning waiver is provided in the Courts of Appeals, not this court.  *See* 45 U.S.C. § 355(f).  Thus, the issue of the propriety of a waiver is not one this court will address.

[7]The regulation requires that the installment plan be "in accordance with the Federal Claims Collection Standards, found in 4 C.F.R. chapter 2.  These standards provide that whenever possible installment payments should be sufficient in amounts and frequency to liquidate the debt in not more than 3 years.  20 C.F.R. § 255.5.

Accordingly, it is respectfully RECOMMENDED:

1.  That plaintiff's motion for summary judgment (doc. 18) be GRANTED.

2. That the clerk be instructed to enter judgment in favor of the United States of America and against defendant Horace Gant in the amount of $78,778.37, together with interest thereafter as provided in 28 U.S.C. § 1961.

3.  That plaintiff be awarded costs to be charged to the defendant as provided by law.

At Pensacola, Florida this 22nd day of February, 2008.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).